**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. CHARLES DONIGIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No:  1:06-cv-11166-DPW |
| | ) | |
| ST. JUDE MEDICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ST. JUDE MEDICAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO DISMISS RELATOR'S THIRD AMENDED COMPLAINT**

NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110

REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005

*Counsel for Defendant St. Jude Medical, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      PROCEDURAL BACKGROUND ................................................................................... 1

II.     RELATOR'S ALLEGATIONS ........................................................................................ 1

III.    SUMMARY OF DEFENDANT'S ARGUMENTS .......................................................... 3

IV.     THE COURT DOES NOT HAVE JURISDICTION over this matter ............................... 4

        A.      Relator's Allegations Were Publicly Disclosed in and Based Upon
                Newspaper Articles .............................................................................................. 5

        B.      Relator Is Not an Original Source ........................................................................ 7

V.      THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED FOR
        FAILURE TO STATE A CLAIM BECAUSE RELATOR DOES NOT
        ADEQUATELY ALLEGE THAT ANY SUCH CLAIMS ARE FALSE ......................... 8

        A.      Legal Standard on a Motion to Dismiss an FCA Claim Pursuant to Rule
                12(b)(6) ................................................................................................................ 8

        B.      Submission of False Claims ............................................................................... 10

                1.      Potential Theories of Falsity .................................................................. 10

                2.      Analysis of Relator's Claims ................................................................. 11

                        a.      Factual Falsity ............................................................................. 11
                        b.      Legal Falsity Under Express or Implied Certification ................ 11
                                (i)     Provider Agreements ....................................................... 12
                                (ii)    Claims for Payment .......................................................... 13
                                (iii)   Cost Reports ..................................................................... 14

        C.      Relator Fails to State a Claim for Retaliation Under the FCA ........................... 15

        D.      Relator Fails to Adequately Allege Wrongful Termination Under Missouri
                Law ..................................................................................................................... 16

VI.     THE FCA ALLEGATIONS  SHOULD BE DISMISSED FOR FAILURE TO
        PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(B) ................................ 18

        A.      Legal Standard on a Motion to Dismiss Pursuant to Rule 9(b) .......................... 18

        B.      Relator Has Not Tied Fraud to the Submission of False Claims ......................... 18

VII.    CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Arruda v. Sears Roebuck & Co.*,
   310 F.3d 13 (1st Cir. 2002)..................................................................................... 18

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).............................................................................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .............................................. 9

*Bell v. Dynamite Foods*, 969 S.W.2d 847, 851 (Mo. Ct. App. 1998).......................... 17

*Bennartz v. City of Columbia*, 300 S.W.3d 251, 258 (Mo. Ct. App. 2009)................. 17

*Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo. App. 1985) ............................... 17

Federal Rule of Civil Procedure 9(b)........................................................................... 4

*Graham County Water and Soil Dist. v. U.S. ex rel. Wilson*,
   No. 08-304, --- S.Ct. ----, 2010 WL 1189557, at *2 n.1 (March 30, 2010)............. 11

*Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 n. 3 (11th Cir. 2009) .............. 19

*Houck on behalf of U.S. v. Folding Carton Administration Committee*, 881 F.2d 494, 505 (7th
   Cir. 1989)................................................................................................................. 8

*Keveney v. Missouri Military Acad.*, 204 S.W.3d 98, 103 (Mo. Feb. 9, 2010) ........... 17

*Margiotta v. Christian Hosp. Northeast Northwest.*, No. SC 90249, 2010 WL 444886, at *2 (Mo.
   Feb. 9, 2010) ........................................................................................................... 16

*Mikes v. Strauss*, 274 F.3d 687, 697 (2d Cir. 2001) ............................................ 10, 11

*Rhode Island Hospital v. Leavitt*,
   548 F.3d 29 (1st Cir. 2008)..................................................................................... 13

*Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 470-71 (2007).................................... 5, 7

*Spears v. Missouri Dept. of Corr.*, 210 F.3d 850 (8th Cir. 2000)............................... 17

*Thomas,* 2008 WL 4853630, at *10........................................................................... 14

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 131 n. 24 (11th Cir. 2002)............... 18

*U.S. ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008)
   ............................................................................................................................... 10

*U.S. ex rel. Duxbury v. Ortho Biotech Products, L.P.,* 579 F.3d 13, 21 (1st Cir. 2009) ............... 5

*U.S. ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997).......... 7

*U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) .................................... 18

*U.S. ex rel. Hutcheson v. Blackstone Medical, Inc.*, No. 06-11771-WGY, 2010 WL 938361, at
    *11-12 (D. Mass. Mar. 12, 2010). ................................................................................... passim

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004)................................................................................... 9, 11, 15, 18

*U.S. ex rel. Kennedy v. Aventis Pharms, Inc.*, 610 F. Supp. 2d 938 (N.D. Ill. 2009) .................. 12

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 114 (2d Cir. 2010) ........................ 11

*U.S. ex rel. LeBlanc v. Raytheon Co.*, 874 F. Supp 35, 41 (D. Mass. 1995), *aff'd* 62 F.3d 1411
    (1st Cir. 1995)...................................................................................................................... 4, 8

*U.S. ex rel. Ondis v. City of Woonsocket*,
    587 F.3d 49 (1st Cir. 2009)................................................................................................ 4, 5, 7

*U.S. ex rel. Poteet v. Lenke*,
    604 F. Supp. 2d 313 (D. Mass. 2009) .................................................................................. 5, 7

*U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 728 (1st Cir. 2007) .................................... 5, 11, 19

*U.S. ex rel. Siewick v. Jamieson Sci. and Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000) .... 11

*U.S. ex rel. Smith v. Yale Univ*, 415 F. Supp. 2d 58, 103 (D. Conn. 2006) .................................. 15

*U.S. ex rel. Stinson v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1990) .......................... 8

*U.S. ex rel. Thomas v. Bailey*, No. 4:06CV00465 JLH, 2008 WL 4853630, at *11-13 (E.D. Ark.
    Nov. 6, 2008) ...................................................................................................................... 13, 14

*U.S. ex rel. Westmoreland v. Amgen*, Civ. Action No. 06-10972-WGY, 2010 WL 1634315, at *6
    (D. Mass. Apr. 23, 2010) ............................................................................................ 9, 11, 12, 13

*U.S. ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ................................................................................................. 11

*U.S. v. Sci. ApplicationsInt'l Corp*, 653 F. Supp. 2d 87, 106-07 (D.D.C. 2009)......................... 19

*Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005) ....................................... 7

*Webb v. Shalala*,
    49 F. Supp. 2d 1114 (W.D. Ark. 1999) ............................................................................... 14

## Statutes

28 U.S.C. § 1367.............................................................................................................................. 3

31 U.S.C. § 3729 *et seq*................................................................................................................... 1

31 U.S.C. § 3730.................................................................................................................... 4, 5, 7, 15

42 U.S.C. § 1320a-7b...................................................................................................................... 11

42 U.S.C. § 1395ww ................................................................................................. 2

42 U.S.C. §1320a-7b(b) ........................................................................................... 3

42 U.S.C. §412.1 .................................................................................................... 13

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................... 1, 18, 19

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 1

Federal Rule of Civil Procedure 9(b) ................................................................... 1, 18

Federal Rules of Civil Procedure 12(b)(1).................................................................. 1

**8**

Barry Meier, *Implant Program for Heart Device was a Sales Spur*, The New York Times, Sept. 27, 2005 ................................................................................................. 6

Barry Meier, *Small Maker of Heart Devices is Said to be Focus of Inquiry*, The New York Times, March 25, 2006 ...................................................................................... 6

Jim McCartney, *Dark Times for Heart Aid Industry*, St. Paul Pioneer Press, Oct. 27, 2005 ........ 6

T.M. Burton. *U.S. Seeks Data from Medtronic, St. Jude, Guidant.* Wall Street Journal, October 25, 2005 ................................................................................................................. 6

Defendant St. Jude Medical, Inc. ("Defendant" or "STJ") by and through its undersigned counsel respectfully submits this memorandum of law in support of its Motion to Dismiss the Third Amended Complaint of Charles Donigian ("Relator") for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to plead fraud with particularity pursuant to Federal Rules of Civil Procedure 12(b)(1) , 12(b)(6) and 9(b).

## I.      PROCEDURAL BACKGROUND

The Relator initiated this action while employed by STJ on July 6, 2006, by filing under seal a *qui tam* complaint against STJ, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* (Dkt. No. 1).   While still employed by STJ, Relator filed an Amended Complaint on August 4, 2006.  (Dkt. No. 4). On December 22, 2009, the United States declined to intervene.[1]  On January 19, 2010, the Court ordered the Realtor's Third Amended Complaint, filed that same day, to be unsealed.  (Dkt. No. 40).   On February 17, 2010, Relator requested that STJ waive service of summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, and STJ agreed to do so.  (Dkt. No. 47).   On March 19, 2010, STJ filed an Assented to Motion to Unseal and for an Extension of Time.  (Dkt. No. 56).  The Court granted STJ's motion on April 21, 2010.  (Dkt. No. 59).

## II.     RELATOR'S ALLEGATIONS

Relator alleges that STJ develops, manufactures, and distributes pacemakers and implantable cadioverter defibrillators ("ICDs"). (Third Amended Complaint ¶ 11).   STJ sells these products to healthcare providers, including hospitals.  (Third Amended Complaint ¶ 14). Healthcare providers are reimbursed by federal healthcare programs for implantation and follow-

---

[1]  STJ is not aware of the Docket Number because the United States' declination remains under seal.

up visits for pacemakers and ICDs for covered patients.  (Third Amended Complaint ¶ 29).[2]

Healthcare providers bill federal healthcare programs for implants of pacemakers and ICDs

through use of CPT Codes.  (Third Amended Complaint ¶ 30).[3]

Relator further alleges that STJ conducted post-market studies and paid physicians for

participating in those studies.  (Third Amended Complaint ¶¶ 52-54).  Certain studies, including

the ACT Registry, were not for the purpose of gathering legitimate scientific data, but rather for

the purpose of inducing certain physicians to use STJ's products.  (Third Amended Complaint ¶

57).  Certain physicians did not perform the work required by the post-market studies and/or

required STJ employees to complete the work.  (Third Amended Complaint ¶¶ 58, 69, 72-76, 82-

83, 85-86, 92).  STJ also provided entertainment, grants and fellowships to physicians[4] to induce

---

2   Relator alleges that physicians and other providers are paid for pacemaker and ICD implants
    under Medicare Part A, and for device follow-up examinations under Medicare Part B.
    (Complaint ¶¶ 15-16).  Relator also alleges that pursuant to the Medicaid program, providers
    file cost reports, but fails to identify even one example of any such cost report or to allege
    any connection between a cost report and any false claim.  (Third Amended Complaint ¶ 23).
    Finally, Relator alleges that the reimbursement practices for other federal healthcare
    programs "align" with Medicare, but fails to explain those reimbursement programs or
    identify any claims filed pursuant to those programs. (Third Amended Complaint ¶ 26).

3   CPT Codes are only used in an outpatient setting.  In a hospital setting, Medicare pays
    according to a per-patient standardized rate called a Diagnostic Related Group ("DRG") rate.
    *See* 42 U.S.C. § 1395ww(d)(3)(A), (D).

4   While Relator identifies a small number of instances of alleged entertainment of physicians,
    (Third Amended Complaint ¶¶ 96-97), he fails connect any of the alleged entertainment to a
    claim for reimbursement.  Relator does not identify a single grant or fellowship. (Third
    Amended Complaint ¶¶ 98-100).

them to use STJ products.  (Third Amended Complaint ¶¶ 97-104).[5]  STJ provided free products

to hospitals.  (Third Amended Complaint ¶ 103).[6]

Relator also alleges that the above-described payments were kickbacks, in violation of

the Medicare and Medicaid Patient Protection Act, 42 U.S.C. §1320a-7b(b) (the "Anti-kickback

Act," or "AKA") and as such caused physicians and hospitals to file false claims for

reimbursement to federal healthcare programs for STJ products and physician services.  (Third

Amended Complaint ¶¶ 118-120).

Finally, Relator alleges that STJ retaliated against him for raising kickback concerns, and

"constructively discharged" him by requiring him to violate the AKA as a condition of

employment.  (Third Amended Complaint ¶¶ 128-138).

## III.   SUMMARY OF DEFENDANT'S ARGUMENTS

The Complaint is jurisdictionally barred because the essential elements of Relator's claim

were publicly disclosed in newspaper articles while Realtor was still employed by STJ, and

Relator does not qualify as an original source of the information.  As such, the FCA precludes

jurisdiction over Counts I and II.  Because this Court does not have jurisdiction over Counts I

and II, there is no supplemental jurisdiction over the Missouri state law claim.  28 U.S.C. § 1367.

Even if the FCA did provide this Court with jurisdiction, Relator fails to state a claim

upon which relief can be granted because the Third Amended Complaint contains no allegations

---

[5]   Relator also alleges that cardiologists instructed STJ "employees in preparing 'superbills' so the doctors could submit claims to Medicare/Medicaid . . . ."  (Third Amended Complaint ¶¶ 58, 71, 83). Relator does not explain what these "superbills" were or how they were connected to any alleged kickback or submission of claims to a federal healthcare program.

[6]   Relator fails to identify a single instance of free product to a hospital, nor does he connect any such free product to a claim.

that any claims submitted were factually false, and there is no legal basis to support Relator's allegation that any claims were legally false.  Relator's claim for retaliation should be dismissed because he has not alleged that he was engaged in conduct protected by the statute, or that he was constructively discharged.

Finally, Relator does not plead the alleged fraud with the specificity required by Federal Rule of Civil Procedure 9(b) despite having had three attempts to do so.

## IV.    THE COURT DOES NOT HAVE JURISDICTION OVER THIS MATTER

The FCA provides that, "[n]o court shall have jurisdiction over an action under this section based on the public disclosure of allegations or transactions . . .  from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A).  Relator bears the burden of proving the existence of federal jurisdiction by a preponderance of the evidence.  *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009).  The Court need not accept Relator's allegations as true in determining the existence of subject matter jurisdiction.  *See U.S. ex rel. LeBlanc v. Raytheon Co.*, 874 F. Supp 35, 41 (D. Mass. 1995), *aff'd* 62 F.3d 1411 (1st Cir. 1995).

In determining whether § 3730(e)(4) bars jurisdiction, the First Circuit instructs the Court to conduct the following analysis:

> (1) Whether there has been a public disclosure of the allegations or transactions in the relator's complaint; (2) if so, whether the public disclosure occurred in the manner specified in the statute; (3) if so, whether the relator's suit  is "based upon" those publicly disclosed allegations or transactions; and (4) if the answers to these questions are in the affirmative, whether the relator falls within the "original source" exception as defined in § 3730(e)(4)(B).

*U.S. ex rel. Duxbury v. Ortho Biotech Products, L.P.,* 579 F.3d 13, 21 (1st Cir. 2009) (citing *U.S. ex rel. Rost v. Pfizer, Inc.,* 507 F.3d 720, 728 (1st Cir. 2007)).  "For the purpose of the FCA, public disclosure occurs when the essential elements exposing the particular transaction as fraudulent find their way into the public domain."  *Ondis,* 587 F.3d at 54.  A dismissal is warranted where the plaintiff seeks to pursue a claim, the essence of which is "derived from" a prior public disclosure.  *U.S. ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313, 321 (D. Mass. 2009).  As long as the Relator's allegations are substantially similar to information disclosed publicly, the Relator's claim is considered to be "based upon" the public disclosure for FCA purposes, even if he actually obtained his information from a different source.  *Ondis*, 587 F.3d at 57.

If the allegations are publicly disclosed, an action may proceed only if it is brought by an "original source."  The FCA defines "original source" as one "who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).  The "information" to which the FCA speaks is the information upon which the Relator's allegations are based.  *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 470-71 (2007).  The FCA use of "direct" means "marked by absence of an intervening agency, instrumentality, or influence."  *Ondis*, 587 F.3d at 59.

## A.    RELATOR'S ALLEGATIONS WERE PUBLICLY DISCLOSED IN AND BASED UPON NEWSPAPER ARTICLES[7]

On September 27, 2005, while Realtor was employed by STJ, and over nine months prior to the date Relator filed his original complaint, the New York Times published an article

---

[7]   Relator does not deny these reports, but instead alleges that he was unaware of them.  (Third Amended Complaint ¶ 107).  Relator's alleged unawareness is irrelevant to the Court's determination whether the Third Amended Complaint is "based upon" these reports.

confirming statements from STJ and its two major competitors, Guidant Corporation (now Boston Scientific) and Medtronic Corporation, that all three companies paid physicians to participate in post-market studies.  Barry Meier, *Implant Program for Heart Device was a Sales Spur*, The New York Times, Sept. 27, 2005.  (Exhibit A).  This article specifically discussed the ACT registry referenced by Relator, noted that two experts questioned the scientific value of that study, and further explained that it was illegal under federal law to provide financial benefits to physicians to induce them to use a product.

On October 26, 2005, over eight months prior to the date Relator filed his original complaint, the Wall Street Journal reported statements by STJ, Guidant and Medtronic that they received subpoenas from the U.S. Attorney's Office in Boston regarding an investigation of the provision of benefits to anyone in a position to recommend purchases of pacemakers or defibrillators.  T.M. Burton. *U.S. Seeks Data from Medtronic, St. Jude, Guidant*, Wall Street Journal, Oct. 26, 2005.  (Exhibit B).  This article specifically noted that "there has been considerable debate lately among cardiologists about sales practices in the industry, including payments to doctors for filling out surveys and participating in postmarket studies called 'registries.'"  *Id*.  The paper further wrote, "In the case of St. Jude, the company has used such surveys in its marketing and has paid $2000 each to individual doctors over two years for their participation and data collection in a registry called the ACT study."  *Id*.[8]

These newspaper articles make public the essential elements of Relator's claim, specifically that STJ paid physicians in order to enroll patients in studies as a way of increasing

---

[8]   Other similar articles appeared in the press.  Barry Meier, *Small Maker of Heart Devices is Said to be Focus of Inquiry*, The New York Times, Mar. 25, 2006; Jim McCartney, *Dark Times for Heart Aid Industry*, St. Paul Pioneer Press, Oct. 27, 2005.  (Exhibits C and D).

sales, and that these payments allegedly were kickbacks in violation of federal law.   The

publication of this information constitutes a disclosure "from the news media."  *See* 31 U.S.C. §

3730(e)(4)(A).  Regardless of whether Relator read these articles, his allegations are substantially

similar to those that were publicly disclosed, and as such, his allegations for FCA purposes are

"based upon" those news reports.  *Ondis*, 587 F.3d at 57-58; *Poteet*, 604 F. Supp. 2d at 320-321.

This jurisdictional bar was intended to prevent exactly what happened here, a case of an

"opportunistic plaintiff . . . bringing [a] parasitic lawsuit," that would not have been brought if he

had not been aware of the government's ongoing investigation.  *Walburn v. Lockheed Martin

Corp.*, 431 F.3d 966, 970 (6th Cir. 2005).

### B.      RELATOR IS NOT AN ORIGINAL SOURCE[9]

In order to qualify as an original source Relator must have both direct and independent

knowledge of the information upon which his allegations are based.  *Ondis*, 587 F.3d at 58-59.

"If a relator merely uses his or her unique expertise or training to conclude that the material

elements already in the public domain constitute a false claim, then a *qui tam* action cannot

proceed."  *Ondis*, 587 F.3d at 49 (citing *U.S. ex rel. Findley v. FPC-Boron Employees' Club*, 105

F.3d 675, 688 (D.C. Cir. 1997)).  Relator was employed by STJ at the time the above-referenced

newspaper articles were published in 2005.  Coincidentally, he claims that he began questioning

---

9    Despite the fact that Relator's Original Complaint and Amended Complaint are devoid of
     any allegations or legal theory that would survive a motion to dismiss, the Court must assess
     Relator's Third Amended Complaint in determining whether Relator is an original source of
     the allegations contained therein.  *See Rockwell*, 549 U.S. 457, 473-474 (2007).  This is so,
     even though the Third Amended Complaint was filed three and a half years after the Original
     Complaint, and after almost four and a half years of government investigation.  Since only
     the United States and Relator know what benefit from, and access to, documents and
     testimony provided by STJ in response to the government's investigation that Relator had, it
     is Relator's burden to prove that he did not "plead a trivial theory of fraud for which he had
     some direct and independent knowledge and later amend the complaint to include theories
     copied from the public domain or from material in the Government's possession."  *Id.* at 473.

STJ's alleged practice of filling out study paperwork and signing doctors' names at the same time the Wall Street Journal article regarding the government investigation was published in October 2005. (Complaint ¶ 107). Relator then, while remaining a STJ employee, began collecting information that forms the basis of his allegations. While the Third Amended Complaint contains only a small number of date-specific allegations, very few of them precede the public disclosure. Even if Relator did gain some limited knowledge of alleged STJ business practices, any such knowledge was guided and instructed by two intervening influences, (1) the newspaper coverage of the investigation, and (2) possible communications with the government regarding documents and testimony provided to the government by STJ and other sources.[10] *See LeBlanc*, 874 F. Supp at 41 (finding Relator was not an original source where "but for his review of the publicly disclosed allegations . . ., he would not have even known about the possibility of problems" by the defendant). *See also Houck on behalf of U.S. v. Folding Carton Administration Committee*, 881 F.2d 494, 505 (7th Cir. 1989) (finding that Relator was not an original source because his knowledge of the fraud was not independent where there was no evidence he would have learned of the allegedly false claims absent public disclosure); *U.S. ex rel. Stinson v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1990) (same).

## V.    THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE RELATOR DOES NOT ADEQUATELY ALLEGE THAT ANY SUCH CLAIMS ARE FALSE

### A.    LEGAL STANDARD ON A MOTION TO DISMISS AN FCA CLAIM PURSUANT TO RULE 12(B)(6)

---

[10] Relator attaches to the Third Amended Complaint two lists of alleged implant patients whom he assumes were "covered by Medicare by virtue of their age, or by another Government Healthcare Program." (Third Amended Complaint ¶¶ 71, 76, Exhibits 3 and 5). He fails to allege by whom, when, how and to whom these alleged claims were filed. Further, he does not allege how he came into possession of this data or why the data was not attached to his first two complaints.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *U.S. ex rel. Westmoreland v. Amgen*, Civ. Action No. 06-10972-WGY, 2010 WL 1634315, at *6 (D. Mass. Apr. 23, 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation")). The FCA imposes liability on a person who (1) presented or caused to be presented to the United States government, a claim for payment, where (2) that claim is false or fraudulent, and (3) the action was undertaken "knowingly." *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,* 360 F.3d 220, 225 (1st Cir. 2004). "Knowingly" means "with actual knowledge of the falsity of the information contained in the claim, or in deliberate ignorance or reckless disregard of the truth or falsity of that information." *Id*. The statement must be false at the time it was made. *Westmoreland,* 2010 WL 1634315, at *10. The false record or statement must be material to the government's decision to pay the claim, that is, the government would likely have declined to pay had they known of the fraud. *U.S. ex rel. Hutcheson v. Blackstone Medical, Inc.*, No. 06-11771-WGY, 2010 WL 938361, at *11-12 (D. Mass. Mar. 12, 2010).

Relator, while failing to cite to specific sub-sections of the FCA, alleges that Defendant (1) caused hospitals and doctors to submit false claims by falsely certifying compliance with federal and state law including the Anti-kickback Act,[11] and, (2) caused hospitals and doctors to

---

[11] While Relator identified a list of patients allegedly enrolled in a post-market study, he did not specifically identify any claim for reimbursement to a federal healthcare program, nor did he specifically identify any certification of compliance filed by any hospital or physician.

make or use false records.[12]   Relator alleges that the certifications of compliance were false because Defendant paid fees to physicians for participation in fraudulent post-market studies and provided lavish entertainment.  (Third Amended Complaint ¶¶122-126).[13]

### B.   SUBMISSION OF FALSE CLAIMS

#### 1.   Potential Theories of Falsity

There are three potential theories under which a claim may be "false or fraudulent" under the FCA.  They are (1) factual falsity, (2) legal falsity under an express certification theory, and (3) legal falsity under an implied certification theory.  *Hutcheson,* 2010 WL 938361, at *11-12.

A "factually false" claim is one in which the goods or services provided are either incorrectly described, or were not provided.  *Mikes v. Strauss*, 274 F.3d 687, 697 (2d Cir. 2001).

A claim is legally false under the express false certification theory when the party making the claim certifies compliance with a statute or regulation as a condition of payment by the government, but did not actually comply with the statute or regulation.  *See U.S. ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008); *Hutcheson,* 2010 WL 938361 at *10 (citing *Conner*, 543 F.3d at 1217).

A claim is legally false under the implied false certification theory when the party making the claim makes no express statement about compliance with a statute or regulation, but by submitting a claim implies that it has complied with any preconditions to payment.  *See*

---

[12]  The only allegedly false records identified by Relator are post-market study paperwork.
Relator does not allege that any such paperwork is filed with the government or connected to
any claim, because it is not.

[13]  The Third Amended Complaint contains no specific allegations regarding certifications or
requirements in other government health programs other than Medicare.  Instead, the Relator
alleges, without any detail, that other federal health programs "closely align" with Medicare.
(*See*  Third Amended Complaint ¶ 26).

*Hutcheson*, 2010 WL 938361 at *12 (citing *Conner*, 543 F.3d at 1218); *U.S. ex rel. Siewick v. Jamieson Sci. and Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000).[14]    The implied false certification theory applies only where there are expressly stated preconditions of payment found in the relevant statute or regulations.  *Hutcheson*, 2010 WL 938361, at *12 (citing *Mikes,* 274 F.3d at 694).  *See also U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 114 (2d Cir. 2010).

An AKA violation does not necessarily result in a FCA violation.  At the time the Third Amended Complaint was filed,[15] no statute or regulation expressly required compliance with anti-kickback statutes as a condition of payment.  *Westmoreland*, 2010 WL 1634315, at *11.  *See Rost*, 507 F.3d at 727 (FCA liability does not attach to violations of federal law or regulations . . . that are independent of any false claim) (citing *Karvelas,* 360 F.3d at 225); *see also U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,  125 F.3d 899, 902 (5th Cir. 1997).

## 2.    Analysis of Relator's Claims

### a.  Factual Falsity

Relator does not allege that STJ directly filed claims.  Nor does Relator allege that any claims filed by hospitals or physicians were factually false.

### b.  Legal Falsity Under Express or Implied Certification

---

[14]  The First Circuit has not addressed the viability of a theory of FCA liability based on implied certification of compliance with the AKA.

[15]  On March 23, 2010, Patient Protection and Affordable Care Act ("PPACA") became law. Section 6402(f)(1) of the PPACA adds a new subsection (g) to Section 1128B of the Social Security Act, 42 U.S.C. § 1320a-7b, which provides that "a claim that includes items or services resulting from a violation of [the AKA] constitutes a false or fraudulent claim for purposes of [the FCA]."  This new subsection, however, does not apply retroactively to cases pending prior to March 23, 2010.  *Graham County Water and Soil Dist. v. U.S. ex rel. Wilson*, No. 08-304, --- S.Ct. ----, 2010 WL 1189557, at *2 n.1 (March 30, 2010).

Relator alleges STJ made payments to physicians that were in violation of the AKA, in connection with post-market studies and other alleged schemes to induce physicians to prescribe STJ devices.   (*See e.g.,* Third Complaint ¶¶ 51, 54).   Relator maintains that these payments caused health care providers to file claims containing false certifications of compliance with the AKA.

Relator alleges that the following documents are submitted by health care providers to Medicare and that these documents contain certifications of compliance with the anti-kickback act:  (1)  Provider Agreements, Forms CMS-855A and 8551 (Third Amended Complaint ¶ 27); (2) claims for payment submitted by hospitals on standard forms HCFA-1450, UB-92, and by physicians on form CMS-1500 (Third Amended Complaint ¶¶ 18, 28, 42); (3) hospital cost reports.  (Third Amended Complaint ¶ 23).

(i)   Provider Agreements

While Medicare provider agreements may create an express certification of compliance with the AKA,[16] Relator has failed to identify a single provider agreement submitted to Medicare.  In any event, certifications in provider agreements are specific to the party seeking reimbursement, and do not certify "that the entire transaction complied with the Anti-Kickback Statute . . . ."  *Hutcheson*, 2010 WL 938361, at *15.  As to hospitals, Relator has not alleged sufficient facts to state a claim because there is no allegation of improper payments to hospitals,[17] nor any allegation that hospitals knew or should have known about the alleged

---

[16]  *See Westmoreland*, 2010 WL 1634315, at *8, but identifying conflicting law in *U.S. ex rel. Kennedy v. Aventis Pharms, Inc.,* 610 F. Supp. 2d 938 (N.D. Ill. 2009).

[17]  The single exception being Relator's allegation, without any detail and unconnected to any alleged claim for reimbursement, regarding free goods to hospitals.  (Third Amended Complaint ¶ 103).

kickbacks received by doctors practicing at the hospital. *U.S. ex rel. Thomas v. Bailey*, No. 4:06CV00465 JLH, 2008 WL 4853630, at *11-13 (E.D. Ark. Nov. 6, 2008). Further, since Relator fails to specify who submitted the provider agreements and when they were signed and filed, he similarly fails to allege that either hospitals or physicians expressly made certifications knowing their falsity. Absent an allegation that specific hospitals knew that specific physicians performing pacemaker and ICD implants at their hospitals would be receiving kickbacks, or that specific physicians knew that they would be receiving kickbacks at the time they submitted their provider agreement, there can be no false claim. *See Westmoreland*, 2010 WL 1634315, at *10; *Hutcheson*, 2010 WL 938361, at *15.

(ii)   Claims for Payment

At the time of the Complaint, no statute or regulation expressly required compliance with the anti-kickback statute as a condition of payment from Medicare. *See Hutcheson*, 2010 WL 938361, at *15. Regardless of whether Medicare claims contain an implied certification of compliance of compliance with the anti-kickback act, Relator has failed to allege that any such certification was material. *See Id.* at *16.

Medicare reimbursement payments to providers for hospital inpatient services are governed by the "prospective payment system" ("PPS"), under which Medicare reimburses providers at predetermined rates that do not reflect the actual costs incurred in treating a patient. 42 U.S.C. §412.1; *Rhode Island Hosp. v. Leavitt*, 548 F.3d 29, 31 n.1 (1st Cir. 2008) The payment is made for the entire procedure based on the Diagnosis-Related Group ("DRG") to which the procedure is assigned; there is no separate payment to hospitals for the use of a

particular device.[18]  "[T]he hospital does not submit invoices for the products purchased for use during a surgery, but the reimbursement rate for the applicable DRG is set at an amount that is intended to include the typical cost of the surgical products purchased for the type of surgery that falls within that DRG."  *Thomas*, 2008 WL 4853630, at *3.  Thus, the structure of federal healthcare reimbursement makes it impossible for the physician's or hospital's choice of  STJ device over a competitor's device to be material to the government's decision to pay the hospital's claim for payment.

The request for reimbursement from the doctor is not for use of a STJ product, but solely for services.[19]  Physicians are reimbursed by federal programs based on the Current Procedural Terminology ("CPT") code. *Webb v. Shalala*, 49 F. Supp. 2d 1114, 1116 (W.D. Ark. 1999). Physicians' reimbursement is not dependent on products used, but only for services provided. As such, the purchase of an STJ product is not "an underlying transaction to the reimbursement request for the doctor" and cannot tainted by any alleged kickback.  *Hutcheson*, 2010 WL 938361, at *16.

(iii)  Cost Reports

Hospital cost reports do not create an express certification of compliance with the AKA. *Hutcheson*, 2010 WL 938361, at *15 n.13; *see also Thomas,* 2008 WL 4853630, at *10.  Rather, the cost report form "simply acknowledges the civil and criminal liability of failing to comply

---

18  There are minor exceptions for "outlier payments" and "new technology" but Relator does not allege that STJ devices qualify for such payments or that these payments form the basis of his claim.

19  Here, the Relator does not allege kickbacks to the hospitals, so any implied certification of compliance with the AKA by the hospitals is true. *Hutcheson*, 2010 WL 938361, at *15.

with the Anti-Kickback Statute," and as such is not specific enough to create FCA liability. *Hutcheson*, 2010 WL 938361, at *15 n.13.

### C. <u>RELATOR FAILS TO STATE A CLAIM FOR RETALIATION UNDER THE FCA</u>

The retaliation provision under the FCA reads in relevant part:

> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of other efforts to stop one or more violations of this subchapter.

31 U.S.C. § 3730(h). In order to prevail, the "[p]laintiff must show that: (1) the employee's conduct was protected under the FCA; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged or discriminated against the employee because of his or her protected conduct." *Karvelas*, 360 F.3d at 235.

Protected conduct involves "acts done . . . in furtherance of an FCA action," 31 U.S.C. § 3730(h), which includes "conduct that reasonably could lead to a viable FCA action." *Karvelas*. at 236. Relator must "do more that merely attempt to get the defendant to comply with Federal and State regulations, he . . . must be trying to recover money for the government." *U.S. ex rel. Smith v. Yale Univ*, 415 F. Supp. 2d 58, 103 (D. Conn. 2006). "What the employer must know is that the plaintiff is engaged in protected conduct, that is, investigation or other activity concerning false or fraudulent claims that the employer knowingly presented to the federal government." *Karvelas*, 360 F.3d at 239.

Relator alleges only that he "question[ed] STJ's practice of filling out the study paperwork and signing for doctors" (Third Amended Complaint ¶ 107), reported "concerns with the manner in which the AWARE Trial and ACT Registry paperwork and patient enrollment

documents were completed" (Third Amended Complaint ¶ 108, *see also* ¶ 113), and reported "the common use of improper and illegal kickbacks by STJ sales force."  (Third Amended Complaint ¶ 114).   These activities do not constitute protected activity.   Reporting alleged irregularities in connection with post-market study data collection and forms has nothing to do with claims for reimbursement to the government.   Relator's complaints about the manner in which the studies were conducted suggests possible issues relating to the integrity of post-market study outcomes, but have nothing to do with STJ causing submission of false claims for reimbursement.   Similarly, because an AKA violation does not necessarily lead to an FCA claim, Relator's "report[ing] to management the common use of improper and illegal kickbacks" is not protected under the FCA.  (Third Amended Complaint ¶ 129).

Further, while STJ may have been aware that Relator was complaining about the process for handling post-market study data and paperwork and compensation of physicians for participation in post-market studies, there is no allegation that Relator reported, or that STJ knew that Relator was investigating, the submission of false claims for reimbursement for STJ products.

### D.   RELATOR FAILS TO ADEQUATELY ALLEGE WRONGFUL TERMINATION UNDER MISSOURI LAW

In Count III, Relator alleges STJ wrongfully discharged him in violation of Missouri law. Generally, an employer can discharge an at-will employee for any reason.   *Margiotta v. Christian Hosp. Northeast Northwest.*, No. SC 90249, 2010 WL 444886, at *2 (Mo. Feb. 9, 2010).   However, under the "public policy exception" to the at-will employment rule, an at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties.   *Id*.   To state a cause of action under either prong

of the public policy exception an employee must allege that he was discharged.  *Keveney v. Missouri Military Acad.*, 204 S.W.3d 98, 103 (Mo. Feb. 9, 2010); *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo. App. 1985).   Relator concedes that he resigned.  (Third Amended Complaint ¶ 153).

Missouri law also recognizes a cause of action for constructive discharge, which requires Relator to allege  STJ deliberately made his working conditions so intolerable that he was forced to resign, *Bennartz v. City of Columbia*, 300 S.W.3d 251, 258 (Mo. Ct. App. 2009), and that he provided the employer with time to address his concerns before resigning.  *Bell v. Dynamite Foods*, 969 S.W.2d 847, 851 (Mo. Ct. App. 1998).

Relator alleges that STJ constructively discharged him by requiring him to "acquiesce in, or actively participate in violations of Medicare and Medicaid compliance requirements and [AKA], as a condition of employment and advancement within the company."  (Third Amended Complaint ¶ 153)   To the contrary, Relator specifically alleges that two of STJ's senior executives instructed him not fill out enrollment and data collection forms, which he found to be objectionable and potentially unlawful.  (Third Amended Complaint ¶¶ 108, 109).   Nor has Relator alleged that his working conditions were so intolerable that he was forced to resign.  The Eighth Circuit has held that poor performance ratings, denial of a requested transfer, and a reprimand did not constitute an intolerable working environment.  *Spears v. Missouri Dept. of Corr.*, 210 F.3d 850 (8th Cir. 2000).

With the exception of conclusory allegations that merely recite the elements of a cause of action, Relator has not alleged that he provided STJ with time to address his concerns before resigning.  He does not allege when or to whom he reported his concerns that STJ was denying

his compensation increases, failing to pay his reimbursement expense, restricting his sales territory, failing to consider him for a promotion, providing him with a negative performance review or tolerating threats of physical harm against him.  (*See* Third Amended Complaint ¶ 146).

## VI. THE FCA ALLEGATIONS  SHOULD BE DISMISSED FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(B)

### A. LEGAL STANDARD ON A MOTION TO DISMISS PURSUANT TO RULE 9(B)

Allegations of fraud are subject to the heightened pleading standard set forth in Rule 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The First Circuit has interpreted this to require that "plaintiff's averments of fraud specify the time, place and content of the alleged false or fraudulent representations.  *Arruda v. Sears Roebuck & Co.*, 310 F.3d 13, 18-19 (1st Cir. 2002).  To meet this standard, plaintiffs must link specific allegations of fraud to claims submitted to the government for payment. *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009).

Strict adherence to Rule 9(b) is particularly warranted in the context of *qui tam* suits because there is significant potential for abuse.  *See, e.g.*, *Karvelas*, 360 F.3d at 231 ("The reluctance of courts to permit *qui tam* relators to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as 'a pretext to uncover unknown wrongs.'"); *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 131 n. 24 (11th Cir. 2002).

### B. RELATOR HAS NOT TIED FRAUD TO THE SUBMISSION OF FALSE CLAIMS

In an effort to comply with Rule 9(b), Relator attaches Exhibit 5, which purports to list certain patients enrolled in the ACT study, and the dates of their implant, enrollment and follow up visits, and claims without any specificity that "all or virtually all" of these patients were covered by Medicare or another federal healthcare program.  (Third Amended Complaint ¶ 76). Relator also attaches Exhibit 3, which purports to be a list of certain patients enrolled in the RARE study.   (Third Amended Complaint ¶ 86).   However, Relator failed to make the fundamental showing required in all false claims cases: he failed to allege any details concerning any false claim.  He has not alleged the false content of any forms or bills submitted, the dates of any claims, the amount of money charged to the government, the particular product for which the government was billed, the individual hospitals involved in any billing for reimbursement of STJ products, the identification number of any claims, or the length of time between any alleged fraudulent practices and the submission of claims based on those practices.[20]  Further, Relator failed to allege with any specificity that a public healthcare reimbursement program covered each of the alleged patients and the specific claims filed in connection with each such program. As this Court reasoned in *Rost*, it is entirely possible that the physicians identified by the Relator "withstood the temptation and did not seek federal reimbursement" or that the patients involved were covered by private insurance or paid the costs themselves. *Rost*, 507 F.3d at 733.

---

[20] Relator's failure to allege dates of false claims is particularly problematic, given recent changes in the law.  In May, 2009, Congress enacted the Fraud Enforcement and Recovery Act ("FERA"), Pub. L. No. 111-21, 123 Stat 1617, which amended 31 U.S.C. § 3729(a)(2). Under the new version, re-codified as 31 U.S.C. § 3729(a)(1)(B), a person is liable if he "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  The change took "effect as if enacted on June 7, 2008, and shall apply to all claims under the False Claims Act that are pending on or after that date."  The pending claims referred to in the new version enacted by FERA are claims for payment, not lawsuits.  *See e.g. Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 n. 3 (11th Cir. 2009); *U.S. v. Sci. Applications Int'l Corp*, 653 F. Supp. 2d 87, 106-07 (D.D.C. 2009).  The Third Amended Complaint was filed in January of 2010.  As Relator has failed to provide any dates on which alleged false claims were submitted, the applicable law remains unclear.

Furthermore, as noted above, because an AKA violation does not necessarily create FCA liability, without knowledge of which form "Dr. MK" allegedly submitted in connection with the services provided to a particular patient, it is impossible to know whether anything submitted was actually false.

## VII.   CONCLUSION

Relator's Third Amended Complaint should be dismissed in its entirety.   Relator is a disgruntled former employee who, based on publically available information regarding an investigation of STJ, filed an Original Complaint alleging nothing more than what was in the public domain.   He then waited three and a half years, during which STJ cooperated with and provided evidence to the government, to file the Third Amended Complaint.   The Court does not have jurisdiction over the False Claims Act claims because Relator's claims were publicly disclosed and he does not qualify as an original source.   Relator has not alleged a set of facts which, taken as true, allows for recovery under the False Claims Act.   He has not alleged that STJ has caused any healthcare provider to submit a materially false claim to the government for reimbursement, or that he engaged in conduct protected by the FCA.   Relator has also not complied with the requirements of Federal Rule of Civil Procedure 9(b) and pled his claims of fraud with sufficient particularity.   For each of these reasons, Defendant STJ respectfully requests that the Third Amended Complaint be dismissed.

Dated:  June 22, 2010

Respectfully submitted

/s/  Joshua H. Orr
Mark D. Seltzer (BBO # 556341)
Joshua H. Orr (BBO# 661602)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617A) 345-1000
Fascimile: (866) 382-6125
Email: mseltzer@nixonpeabody.com
Email: jorr@nixonpeabody.com


Eric A. Dubelier
Katherine J. Seikaly
Admitted *pro hac vice*
REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
Telephone: (202) 414-9291
Facsimile: (202) 414-9299
Email: edubelier@reedsmith.com
Email: kseikaly@reedsmith.com

*Counsel for Defendant St. Jude Medical, Inc.*


## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that counsel for Defendant conferred with counsel for Plaintiff on June

21, 2010 in a good faith attempt to resolve or narrow the issues addressed in this submission.

Plaintiff did not consent to this motion.


/s/ Joshua H. Orr
Joshua H. Orr

**CERTIFICATE OF SERVICE**

I, Joshua H Orr, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this 22nd day of June, 2010.

/s/ Joshua H. Orr
Joshua H. Orr